1
2
3
4
5
6
7

O

8

# UNITED STATES DISTRICT COURT

9

# CENTRAL DISTRICT OF CALIFORNIA

10

11   ANGEL E. GUILLEN,                     )   Case No. CV 13-8170 RNB
                                           )
12                   Plaintiff,            )
                                           )
13         vs.                             )   ORDER REVERSING DECISION OF
                                           )   COMMISSIONER AND REMANDING
14   CAROLYN W. COLVIN, Acting             )   FOR FURTHER ADMINISTRATIVE
     Commissioner of Social Security,      )   PROCEEDINGS
15                                         )
                     Defendant.            )
16                                         )
                                           )
17   _____

18

19        Plaintiff filed a Complaint herein on November 18, 2013, seeking review of the

20   Commissioner's denial of his application for Supplemental Security Income ("SSI")

21   benefits.  In accordance with the Court's Case Management Order, the parties filed

22   a Joint Stipulation on July 25, 2014.  However, plaintiff then filed a Supplemental

23   Brief ("Supp. Br.") on July 31, 2014, seeking remand pursuant to Sentence Six of 42

24   U.S.C. § 405(g) for consideration of "newly discovered" evidence: a subsequent

25   award of SSI benefits by the Commissioner.

26        In a Minute Order issued August 1, 2014, the Court identified the additional

27   issues raised by plaintiff's Supplemental Brief as to which further briefing would be

28   necessary unless the parties stipulated to a remand for further administrative

proceedings.  The Commissioner then filed a Response to the Supplemental Brief on August 19, 2014, and plaintiff filed a Reply thereto on September 9, 2014.  Thus, this matter now is ready for decision.[1]

## DISPUTED ISSUES

The disputed issues that plaintiff originally raised in the Joint Stipulation as grounds for reversal under Sentence Four of 42 U.S.C. § 405(g) are as follows:

1.    Whether the Administrative Law Judge ("ALJ") made a proper step three determination.

2.    Whether the ALJ properly determined plaintiff's past relevant work and residual functional capacity ("RFC").

3.    Whether the ALJ made a proper adverse credibility determination.

The additional disputed issues that the Court construed plaintiff's Supplemental Brief as raising (hereinafter the "Sentence Six issues") are as follows:

4.    Whether the Court even has the authority to remand for payment of benefits based on plaintiff's "newly discovered" evidence of the subsequent award of benefits.

5.    Whether plaintiff's "newly discovered" evidence of the subsequent award of benefits may even be considered by the Court for purposes of its determination whether the ALJ erred in any of the respects alleged by plaintiff in the Joint Stipulation.

6.    Whether plaintiff's "newly discovered" evidence of the

---

[1]    In accordance with Rule 12(c) of the Federal Rules of Civil Procedure, the Court has determined which party is entitled to judgment under the standards set forth in 42 U.S.C. § 405(g).

subsequent award of benefits satisfies the standard for Sentence Six remand for further administrative proceedings under the Ninth Circuit's rationale in <u>Luna v. Astrue</u>, 623 F.3d 1032 (9th Cir. 2010) and this Court's rationale in <u>West v. Colvin</u>, 2014 WL 2511296 (C.D. Cal. June 3, 2014).

　　　　7.　　Whether, even if plaintiff's "newly discovered" evidence of the subsequent award does not satisfy the standard for a Sentence Six remand for further administrative proceedings, it still "triggers the Commissioner's duty to further develop the record here," as contended by plaintiff.

　　　　8.　　Whether, if the case is remanded, the Court should affirm the grant of benefits in plaintiff's subsequent application and limit the scope of the remand to only the time leading up to the favorable determination in the Second Claim, as requested by plaintiff.

## DISCUSSION

As discussed hereafter, the Court finds that reversal is warranted only with respect to the second part of Disputed Issue Two concerning whether the ALJ properly considered the treating physician's opinion.

## I.　　The Sentence Six issues (Disputed Issues Four to Eight).

Pursuant to Sentence Six of 42 U.S.C. § 405(g), the Court has jurisdiction to remand the case to the Commissioner for the consideration of new evidence, but "only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." <u>See also, e.g.</u>, <u>Allen v. Secretary of Health & Human Servs.</u>, 726 F.2d 1470, 1473 (9th Cir. 1984).

//

3

1        Disputed Issue Four is whether the Court even has the authority to remand for
2 payment of benefits based on plaintiff's "newly discovered" evidence of the
3 subsequent award of benefits.  (See Supp. Br. at 1.)  For the reasons stated by the
4 Commissioner (see Response at 3), the Court concurs with the Commissioner that it
5 does not.  See also Melkonyan v. Sullivan, 501 U.S. 89, 98, 111 S. Ct. 2157, 115 L.
6 Ed. 2d 78 (1991) (noting that, under Sentence Six, the Court "does not affirm,
7 modify, or reverse the [Commissioner's] decision; it does not rule in any way as to
8 the correctness of the administrative determination"); Faucher v. Secretary of Health
9 and Human Services, 17 F.3d 171, 173 (6th Cir. 1994) (district court erred in
10 awarding benefits after purporting to apply the requirements of Sentence Six).  The
11 Court further notes that the only legal authority cited by plaintiff to support his
12 position are cases that addressed the issue of remand for payment of benefits under
13 Sentence Four.  (See Reply at 1-2.)[2]

14        Disputed Issue Five is whether plaintiff's "newly discovered" evidence of the
15 subsequent award of benefits may even be considered by the Court for purposes of
16 its determination whether the ALJ erred in any of the respects alleged by plaintiff in
17 the Joint Stipulation.  (See Supp. Br. at 3.)  For the reasons stated by the
18 Commissioner (see Response at 7), the Court concurs with the Commissioner that it
19 may not.  See also Melkonyan, 501 U.S. at 98; Allen v. Commissioner of Social Sec.,
20 561 F.3d 656, 653 (6th Cir. 2009) (noting that to the extent a subsequent favorable
21 decision could constitute "new evidence" under Sentence Six, it "is not meant to
22 address the correctness of the administrative determination made on the evidence
23 already before the initial ALJ").

24

---

25        [2]     Although plaintiff cites Luna in support of his position that the Court has
26 authority to remand for payment of benefits under Sentence Six (see Reply at 1-2),
27 the Court notes that Luna involved issues under both Sentence Six and Sentence
28 Four, and that the issue of whether remand for payment of benefits was warranted
arose in that case only under Sentence Four.  See Luna, 623 F.3d at 1035.

4

1    Disputed Issue Six is whether plaintiff's "newly discovered" evidence of the
2    subsequent award of benefits satisfies the standard for Sentence Six remand for
3    further administrative proceedings under the Ninth Circuit's rationale in <u>Luna</u>, 623
4    F.3d 1032, and this Court's rationale in <u>West</u>, 2014 WL 2511296.  (<u>See</u> Supp. Br. at
5    4-5.)  For the reasons stated by the Commissioner (<u>see</u> Response at 6-7), the Court
6    concurs with the Commissioner that it does not.  Here, in contrast to <u>Luna</u> and <u>West</u>,
7    the subsequent award of benefits was based on different medical evidence and a
8    different time period.  <u>See Bruton v. Massanari</u>, 268 F.3d 824, 827 (9th Cir. 2001)
9    (Sentence Six remand was not warranted where subsequent favorable decision
10   involved "different medical evidence, a different time period, and a different age
11   classification").

12   Disputed Issue Seven is whether, even if plaintiff's "newly discovered"
13   evidence of the subsequent award does not satisfy the standard for a Sentence Six
14   remand for further administrative proceedings, it still "triggers the Commissioner's
15   duty to further develop the record here," as contended by plaintiff.  (<u>See</u> Supp. Br. at
16   5-6.)  For the reasons stated by the Commissioner (<u>see</u> Response at 9), the Court
17   concurs with the Commissioner that it does not.  <u>See also</u> <u>Allen</u>, 561 F.3d at 653 ("To
18   the extent that Allen argues that remand is appropriate based on the *possibility* of new
19   and material evidence, this contradicts the clear language of § 405(g).") (Emphasis
20   in original); <u>Travis v. Sulllivan</u>, 985 F.2d 919, 924-25 (7th Cir. 1993) (district court
21   erred in ordering "brand new" administrative proceeding on the basis of "new and
22   material evidence").

23   Disputed Issue Eight is whether, if the case is remanded, the Court should
24   affirm the grant of benefits in plaintiff's subsequent application and limit the scope
25   of the remand to only the time leading up to the favorable determination in the
26   Second Claim, as requested by plaintiff.  (<u>See</u> Supp. Br. at 6.)  For the reasons stated
27   by the Commissioner (<u>see</u> Response at 3-4), the Court concurs with the
28   Commissioner that it may not affirm the subsequent grant of benefits because the

1    correctness of that award is not before the Court.  See also Baker on Behalf of Baker
2    v. Sullivan, 880 F.2d 319, 321 (11th Cir. 1989) ("[T]he district court had no
3    jurisdiction over the 1985 award when it remanded the case for reconsideration of the
4    1979 claim.  No appeal from that claim had been taken to the district court.");
5    Encarnacion v. Astrue, 724 F. Supp. 2d 243, 245 (D. P.R.) ("The court lacks
6    jurisdiction over the subsequent award of benefits because no appeal from that claim
7    has been taken to the district court.").  However, in view of the Commissioner's
8    position that the relevant time period for purposes of the Court's review is from
9    March 15, 2011 (the filing date of plaintiff's first SSI application) to September 26,
10   2012 (the date of the ALJ's decision) (see Response at 3-4), the scope of the remand
11   hereafter ordered shall be confined to that closed period.

12

13   **II.    The ALJ's adverse credibility determination (Disputed Issue Three).**

14          Disputed Issue Three is directed to the ALJ's adverse credibility determination
15   with respect to plaintiff's subjective symptom testimony.  (See Jt Stip at 20-23.)

16          An ALJ's assessment of pain severity and claimant credibility is entitled to
17   "great weight."  See Weetman v. Sullivan, 877 F.2d 20, 22 (9th Cir. 1989); Nyman
18   v. Heckler, 779 F.2d 528, 531 (9th Cir. 1986).  Under the "Cotton standard," where
19   the claimant has produced objective medical evidence of an impairment which could
20   reasonably be expected to produce some degree of pain and/or other symptoms, and
21   the record is devoid of any affirmative evidence of malingering, the ALJ may reject
22   the claimant's testimony regarding the severity of the claimant's pain and/or other
23   symptoms only if the ALJ makes specific findings stating clear and convincing
24   reasons for doing so.  See Cotton v. Bowen, 799 F.2d 1403, 1407 (9th Cir. 1986); see
25   also Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996); Dodrill v. Shalala, 12
26   F.3d 915, 918 (9th Cir. 1993); Bunnell v. Sullivan, 947 F.2d 341, 343 (9th Cir. 1991).
27          Here, plaintiff testified that he is unable to work because of vision problems
28   caused by cataracts and hand problems caused by rheumatoid arthritis.  (See AR 46.)

6

1   Plaintiff also testified that he becomes tired quickly, that he has sleeping problems,
2   and that he sometimes needs his wife's help to get around in public. (See AR 48-49.)
3   The ALJ determined that, although plaintiff's medically determinable impairments
4   could reasonably be expected to cause the alleged symptoms, plaintiff's statements
5   concerning the intensity, persistence, and limiting effects of these symptoms were not
6   credible to the extent they were inconsistent with the ALJ's RFC determination. (See
7   AR 26.)

8       In support of this adverse credibility determination, the sole reason proffered
9   by the ALJ was that plaintiff's daily activities "have, at least at times, been somewhat
10  greater than [plaintiff] has generally reported." (See AR 26.)  The ALJ specifically
11  explained that plaintiff had admitted to working between one and three days per week
12  for eight hours at a time, work that did not constitute substantial gainful activity but
13  nonetheless reflected adversely on plaintiff's credibility. (See AR 25-26; see also AR
14  42.)  The Court finds that this was a legally sufficient reason on which the ALJ could
15  properly rely in support of his adverse credibility determination.  Evidence that
16  plaintiff engaged in some part-time work belied his testimony about the severity of
17  his symptoms, even if that work did not constitute substantial gainful activity.  See
18  20 C.F.R. § 416.971 ("Even if the work you have done was not substantial gainful
19  activity, it may show that you are able to do more work than you actually did."); Bray
20  v. Commissioner of Social Security Admin., 554 F.3d 1219, 1227 (9th Cir. 2009)
21  (claimant's part-time work as personal caregiver belied claimant's claim of
22  debilitating respiratory illness).  Moreover, as a general matter, it is well-settled that
23  an ALJ may rely on inconsistencies between the level of a claimant's self-reported
24  daily activities and the severity of his symptoms portrayed by his subjective symptom
25  testimony.  See Molina v. Astrue, 674 F.3d 1104, 1113 (9th Cir. 2012); Berry v.
26  Astrue, 622 F.3d 1228, 1234-35 (9th Cir. 2010); Valentine v. Commissioner Social
27  Sec. Admin., 574 F.3d 685, 693 (9th Cir. 2009); Orn v. Astrue, 495 F.3d 625, 639
28  (9th Cir. 2007).

1  **III.    The ALJ's step three determination (Disputed Issue One).**

2          Disputed Issue One is directed to the ALJ's determination at step three of the

3  Commissioner's sequential evaluation process that plaintiff did not have an

4  impairment that met or equaled the requirements of a listed impairment. (See Jt Stip

5  at 3.)

6          At step three of the Commissioner's sequential evaluation process, the ALJ

7  must determine whether a claimant's impairment or combination of impairments

8  meets or equals a listed impairment set out in 20 C.F.R. Part 404, Subpart P,

9  Appendix 1. See Tackett v. Apfel, 180 F.3d 1094, 1099 (9th Cir. 1999). To "meet"

10  a listed impairment, the claimant must establish that he satisfies each element of the

11  listed impairment in question. See Sullivan v. Zebley, 493 U.S. 521, 530, 110 S. Ct.

12  885, 107 L. Ed. 2d 967 (1990); Tackett, 180 F.3d at 1099. To "equal" a listed

13  impairment, a plaintiff "must establish symptoms, signs, and laboratory findings 'at

14  least equal in severity and duration' to the characteristics of a relevant listed

15  impairment, or, if a claimant's impairment is not listed, then to the listed impairment

16  'most like' the claimant's impairment." Tackett, 180 F.3d at 1099 (quoting 20 C.F.R.

17  § 404.1526).

18          Here, plaintiff highlights the following four listed impairments: 2.02 (Loss of

19  central visual acuity), 2.03 (Contraction of the visual field in the better eye), 5.05

20  (Chronic liver disease), and 14.06 (Inflammatory arthritis). (See Jt Stip at 3.)   As

21  discussed below, the Court rejects all of plaintiff's arguments directed to the ALJ's

22  step three determination.

23

24          A.    Whether the ALJ properly determined that plaintiff did not **meet** the

25                requirements of a listed impairment.

26          The only listed impairment whose requirements that plaintiff argues are met is

27  Listing 2.02 (Loss of central visual acuity). (See Jt Stip at 3.) Listing 2.02 requires

28  evidence that "remaining vision in the better eye after best correction is 20/200 or

8

1    less."

2    Here, the ALJ expressly found that plaintiff did not meet the requirements of

3    Listing 2.02 and referenced evidence that plaintiff's corrected vision was 20/100

4    bilaterally.  (See AR 24, 29.)  Plaintiff points to other evidence that his vision also

5    was measured at 20/200 bilaterally.  (See Jt Stip at 3; see also AR 294, 295.)

6    However, the evidence cited by plaintiff described his vision "without glasses." (See

7    AR 295.)  This evidence fails to satisfy the requirements of Listing 2.02, which

8    requires evidence of vision "after best correction."[3]

9

10   **B.**    **Whether the ALJ properly determined that plaintiff did not equal the**

11          **requirements of a listed impairment.**

12   Plaintiff does not attempt to show how he equals the requirements of any of the

13   four listed impairments that he specified, but plaintiff merely contends that the ALJ

14   erred under SSR 96-6p by failing to call a medical expert during the administrative

15   hearing "to testify regarding the equivalency standard."  (See Jt Stip at 3, 9.)

16   As a threshold matter, the Court rejects plaintiff's challenge to the ALJ's

17   equivalency determination in light of plaintiff's utter failure to present any evidence

18   or plausible theory of equivalency.  See Burch v. Barnhart, 400 F.3d 676, 683 (9th

19   Cir. 2005) ("An ALJ is not required to discuss the combined effects of a claimant's

20   impairments or compare them to any listing in an equivalency determination, unless

21   the claimant presents evidence in an effort to establish equivalence."); Lewis v.

22   Apfel, 236 F.3d 503, 514 (9th Cir. 2005) (ALJ's failure to consider equivalence was

23

24        [3]    The Court notes that the evidence cited by plaintiff also reflected that

25   plaintiff's vision in his better (left) eye after "pinhole correction" was measured at

26   20/200.  (See AR 295.)  However, this evidence also fails to satisfy the requirements

27   of Listing 2.02 because the Commissioner's regulations do not count pinhole testing

28   as a measure of central visual acuity after best correction.  See 20 C.F.R., Pt. 404,
     Subpt. P, App. 1, § 2.00(A)(5)(a)(iii).

not reversible error because the claimant did not offer any theory, plausible or otherwise, as to how his impairments combined to equal a listed impairment).

Moreover, the Court rejects plaintiff's contention that SSR 96-6p required the ALJ to call a medical expert at the administrative hearing to testify as to equivalency. SSR 96-6p does not contain such a specific requirement, but only provides that an ALJ may rely on the expert opinion of a State agency medical consultant on equivalence. See SSR 96-6p, 1996 WL 374180, at *3. Here, the ALJ relied on the opinions of two State agency medical consultants who both opined that plaintiff was not disabled but capable of performing work at a medium exertional level. (See AR 29; see also AR 297-305, 334-41.) Although SSR 96-6p does require an opinion from a medical expert in limited circumstances – when the ALJ opines that an existing case record suggests that a judgment of equivalence may be reasonable or that an updated case record may change the findings of the State agency medical consultants – such circumstances do not exist here.

Finally, as a general matter, the Court rejects plaintiff's argument that the ALJ should have collected additional medical evidence before making his equivalency determination. In Lewis, 236 F.3d at 514-15, the Ninth Circuit rejected the argument that an ALJ had a duty to gather additional medical evidence before making an equivalency determination where (1) the ALJ did not indicate that he found the record insufficient to properly evaluate the evidence; and (2) the evidence did not consistently favor a finding of disability under a listing. Here, likewise, the ALJ did not indicate that he found the record insufficient to properly evaluate the evidence; nor did the evidence consistently favor a finding of disability under any of the listed impairments specified by plaintiff.

## IV.   The ALJ's step four determination (Disputed Issue Two).

Although Disputed Issue Two is framed as a challenge to the ALJ's RFC determination for purposes of his step four determination, it also encompasses a

1    challenge to the ALJ's determination as to plaintiff's past relevant work. (See Jt Stip

2    at 11-20.)  As discussed below, the Court concurs with plaintiff only with respect to

3    the ALJ's RFC determination.

4

5           A.    Whether the ALJ properly determined that plaintiff had past relevant

6                 work.

7           "Past relevant work" is work that a claimant has done in the past 15 years, that

8    was substantial gainful activity, and that lasted long enough for a claimant to learn

9    to do it.  See 20 C.F.R. § 416.960(b).  "Substantial gainful activity" is work activity

10   that "involves doing significant physical or mental activities" on a full or part-time

11   basis and is the "kind of work usually done for pay or profit, whether or not a profit

12   is realized."  See 20 C.F.R. § 416.972(a) and (b).

13          Here, the ALJ determined that plaintiff had engaged in substantial gainful

14   activity within the past 15 years: the jobs of kitchen steward, laundry sorter, and shoe

15   repairer.  (See AR 30.)[4]  Plaintiff points out that he earned almost no money in the

16   past 15 years because he performed these jobs while he was incarcerated. (See Jt Stip

17   at 11.)  However, the Commissioner may point to substantial evidence, aside from

18   earnings, that a claimant has engaged in substantial gainful activity. See Lewis, 236

19   F.3d at 515.  Factors to consider include the time spent working, the quality of a

20   person's performance, special conditions, and the possibility of self-employment. See

21   Katz v. Secretary of Health & Human Services, 972 F.2d 290, 293 (9th Cir. 1992).

22   Here, the record reflects that plaintiff's jobs while he was in prison involved working

23   five to eight hours per day and supervising other inmates while working in the

24   kitchen. (See AR 30; see also 45-46.)  The Court finds this is substantial evidence

25

26   _____

27          [4]    The ALJ also determined that plaintiff's past relevant work included the
     job of brick laborer, but this job is not at issue because the ALJ eventually determined
28   that plaintiff could not perform it. (See AR 30.)

1  supporting the ALJ's determination that plaintiff had engaged in substantial gainful

2  activity.  See Keyes v. Sullivan, 894 F.2d 1053, 1056-57 (9th Cir. 1990) (work that

3  was performed at church for 5.5 hours per day and that included supervision of other

4  employees constituted substantial gainful activity).

5       Plaintiff further argues that the ALJ should have considered whether his

6  incarceration was a "special condition" that precluded substantial gainful activity.

7  (See Jt Stip at 11.)  The Commissioner's regulations provide that if work is done

8  under special conditions, the Commissioner may find that the work does not show a

9  claimant is able to do substantial gainful activity.  See 20 C.F.R. § 416.973(c).  The

10  special conditions are the following: (1) the claimant required and received special

11  assistance from other employees in performing his work; (2) the claimant was

12  allowed to work irregular hours or take frequent rest periods; (3) the claimant was

13  provided with special equipment or was assigned work especially suited to his

14  impairment; (4) the claimant was able to work only because of specially arranged

15  circumstances, for example, other persons helped him prepare for or get to and from

16  work; (5) the claimant was permitted to work at a lower standard of productivity or

17  efficiency than other employees; and (6) the claimant was given the opportunity to

18  work, despite his impairment, because of family relationship, past association with

19  his employer, or his employer's concern for his welfare.  See id.  Here, the Court finds

20  that plaintiff has failed to specify, much less show, how any of these conditions

21  applied to him.  Indeed, the record is devoid of any evidence that any special

22  conditions were imposed on plaintiff's work while in prison.  The Court also rejects

23  plaintiff's unsupported implication that incarceration per se constitutes a special

24  condition.  See Struck v. Astrue, 2010 WL 1734855, at *6 (W.D. Wash. Apr. 28,

25  2010) (declining to consider unsupported allegation that jobs done while incarcerated

26  do not qualify as past relevant work).

27  //

28  //

1    B.    Whether the ALJ properly determined plaintiff's residual functional
2          capacity.

3        The ALJ determined that plaintiff had an RFC for medium work with certain
4    limitations for plaintiff's vision problem.  (See AR 24-25.)[5]  Plaintiff contends that
5    the ALJ's RFC determination is erroneous because it failed to account for (1)
6    evidence of additional impairments and (2) the opinion of Dr. Boutros, plaintiff's
7    treating physician.  (See Jt Stip at 12.)  As discussed below, the Court concurs with
8    plaintiff only with respect to Dr. Boutros's opinion.

9

10                1.    Evidence of additional impairments

11        Plaintiff contends that the ALJ failed to properly consider evidence that he has
12   cataracts and rheumatoid arthritis.  (See Jt Stip at 12.)  However, plaintiff has failed
13   to cite any evidence that these impairments imposed any functional limitations that
14   the ALJ failed to properly consider in making his RFC determination.  Indeed,
15   plaintiff has not even specified what these functional limitations are.  Accordingly,
16   the Court rejects plaintiff's contention that the ALJ's RFC determination was
17   erroneous simply because the record reflects that he has these conditions.  See
18   Houghton v. Commissioner Social Sec. Admin., 493 Fed. Appx. 843, 845-46 (9th Cir.
19   2012) (now citable for its persuasive value per Ninth Circuit Rule 36-3) (ALJ was not
20   required to discuss conditions "in the absence of significant probative evidence that

21   _____

22        [5]    Specifically, the ALJ determined that plaintiff "can lift and/or carry 50
23   pounds occasionally and 25 frequently; he can stand and/or walk for six hours out of
24   an eight-hour workday with regular breaks; he can sit for six hours out of an eight-
     hour workday with regular breaks; he is unable to read very small print; unable to
25   read ordinary news print or book print; unable to read a computer screen; restricted
26   from hazards such as unprotected heights and dangerous machinery, but is capable
27   of avoiding ordinary hazards in the workplace; the claimant may occasionally be
     exposed to extreme cold and vibrations; the claimant's near acuity would be
28   frequent."  (See AR 24-25.)

                                        13

1   they had some functional impact on Houghton's ability to work"); see also Morgan

2   v. Comm'r of Soc. Sec., 169 F.3d 595, 601 (9th Cir. 1999) (ALJ properly discounted

3   medical evidence of symptoms and characteristics where the record failed to "show

4   how Morgan's symptoms translate into specific functional deficits which preclude

5   work activity" and physician "did not explain *how* these characteristics precluded

6   work activity in Morgan's case") (emphasis in original).

7

8                    2.      Dr. Boutros's opinion

9           Dr. Boutros, plaintiff's treating physician, submitted an opinion describing

10   plaintiff's ability to work in light of his untreated hepatitis C and kidney stones. (See

11   AR 356-60.)

12          The law is well established in this Circuit that a treating physician's opinions

13   are entitled to special weight because a treating physician is employed to cure and has

14   a greater opportunity to know and observe the patient as an individual.   See

15   McAllister v. Sullivan, 888 F.2d 599, 602 (9th Cir. 1989).  "The treating physician's

16   opinion is not, however, necessarily conclusive as to either a physical condition or the

17   ultimate issue of disability."   Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir.

18   1989).  The weight given a treating physician's opinion depends on whether it is

19   supported by sufficient medical data and is consistent with other evidence in the

20   record. See 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  If the treating physician's

21   opinion is uncontroverted by another doctor, it may be rejected only for "clear and

22   convincing" reasons.  See Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996); Baxter

23   v. Sullivan, 923 F.3d 1391, 1396 (9th Cir. 1991).  Where, as here, the treating

24   physician's opinion is controverted, it may be rejected only if the ALJ makes findings

25   setting forth specific and legitimate reasons that are based on the substantial evidence

26   of record.  See, e.g., Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998) ("A

27   treating physician's opinion on disability, even if controverted, can be rejected only

28   with specific and legitimate reasons supported by substantial evidence in the

                                           14

1  record.”); <u>Magallanes</u>, 881 F.2d at 751; <u>Winans v. Bowen</u>, 853 F.2d 643, 647 (9th
2  Cir. 1987).

3       Here, Dr. Boutros opined, <u>inter alia</u>, that plaintiff would be incapable of even
4  “low stress” jobs, would be limited to two hours of standing or walking in an eight-
5  hour workday, would sometimes need to take two to three unscheduled fifteen minute
6  breaks, and would be limited to lifting less than ten pounds.  (See AR 357, 358.)

7       The ALJ stated that he accorded “some weight” to Dr. Boutros’s opinion but
8  effectively rejected it after citing what appear to be two reasons.  (See AR 28-29.)
9  First, the ALJ commented, “While Dr. Boutros does have a treating relationship with
10  the claimant, the treatment history is quite brief.”  (See AR 29.)  The record here
11  reflects that at the time Dr. Boutros rendered his opinion, he had been treating
12  plaintiff for six months.  (See AR 356, 360.)  Assuming that the ALJ intended his
13  comment that the treatment history was “quite brief” to serve as a reason to reject Dr.
14  Boutros’s opinion, the Court finds that it was not legally sufficient.  Although an ALJ
15  may properly consider the length of treatment as a factor in weighing medical opinion
16  evidence, <u>see</u> 20 C.F.R.§ 416.927(c)(2)(i), the ALJ failed to specify how the factor
17  applied here.  <u>See</u> <u>Regenitter v. Commissioner of Social Sec. Admin.</u>, 166 F.3d 1294,
18  1299 (9th Cir. 1999) (“[C]onclusory reasons will not justify an ALJ’s rejection of a
19  medical opinion.”).

20       Second, the ALJ noted that the “possibility always exists that a doctor may
21  express an opinion in an effort to assist a patient with whom he or she sympathizes
22  for one reason or another” and that claimants “can be quite insistent and demanding
23  in seeking supportive notes or reports from their physicians.”  (See AR 29.)  The ALJ
24  further noted that “[w]hile it is difficult to confirm the presence of such motives, they
25  are more likely in situations where the opinion in question departs substantially from

26
27
28

15

1  the rest of the evidence in the record, as in the current case." (See AR 29.)[6]  But an

2  ALJ may not presume that a claimant's physician has been improperly influenced in

3  the absence of evidence of "actual improprieties" that undermine the credibility of the

4  physician's opinion.  See Nguyen v. Chater, 100 F.3d 1462, 1464 (9th Cir. 1996);

5  Saelee v. Chater, 94 F.3d 520, 523 (9th Cir. 1996) (per curiam).  Here, the ALJ

6  proffered no supporting evidence of actual improprieties in Dr. Boutros's opinion, a

7  point which the Commissioner concedes. (See Jt Stip at 16.)  Moreover, the ALJ's

8  implication that Dr. Boutros was improperly influenced merely because of the

9  difference between his opinion and other evidence is purely speculative.

10  Accordingly, the Court finds that this was not a legally sufficient reason on which the

11  ALJ could properly rely to reject Dr. Boutros's opinion. See Taylor v. Commissioner

12  of Social Sec. Admin., 659 F.3d 1228, 1234 (9th Cir. 2011) (ALJ failed to provide

13  legally sufficient reasons to reject physicians' opinions when he merely rejected them

14  as "pro-disability reporting" and "focused on being a disability advocate").

15

16                       **CONCLUSION AND ORDER**

17      The law is well established that the decision whether to remand for further

18  proceedings or simply to award benefits is within the discretion of the Court. See,

19  e.g., Salvador v. Sullivan, 917 F.2d 13, 15 (9th Cir. 1990); McAllister, 888 F.2d at

20

21        [6]     The Commissioner contends that what the ALJ actually meant was that
22  "the treatment record was sparse and that [Dr. Boutros's] opinion departs
   substantially from the rest of the evidence of record" (see Jt Stip at 16), an
23  interpretation which the Court finds unpersuasive because it fails to account for the
24  full context of the ALJ's reasoning.  But even if the Commissioner's interpretation
   of the ALJ's reasoning were correct, such a conclusory reason still would not be a
25  legally sufficient reason on which the ALJ could properly rely to reject Dr. Boutros's
26  opinion.  See Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988) ("To say that
   medical opinions are not supported by sufficient objective findings or are contrary to
27  the preponderant conclusions mandated by the objective findings does not achieve the
28  level of specificity our prior cases have required.")

603; <u>Lewin v. Schweiker</u>, 654 F.2d 631, 635 (9th Cir. 1981).  Remand is warranted where additional administrative proceedings could remedy defects in the decision. <u>See, e.g.</u>, <u>Kail v. Heckler</u>, 722 F.2d 1496, 1497 (9th Cir. 1984); <u>Lewin</u>, 654 F.2d at 635.  Remand for the payment of benefits is appropriate where no useful purpose would be served by further administrative proceedings, <u>Kornock v. Harris</u>, 648 F.2d 525, 527 (9th Cir. 1980); where the record has been fully developed, <u>Hoffman v. Heckler</u>, 785 F.2d 1423, 1425 (9th Cir. 1986); or where remand would unnecessarily delay the receipt of benefits, <u>Bilby v. Schweiker</u>, 762 F.2d 716, 719 (9th Cir. 1985).

The Court is mindful that, in <u>Garrison v. Colvin</u>, - F.3d -, 2014 WL 3397218, at *19-21 (9th Cir. Jul. 14, 2014), a Ninth Circuit panel held that where an ALJ failed to properly a reject treating medical opinion (and other evidence), it was appropriate to credit the evidence as true and remand the case for calculation and award of benefits.  However, the Court also notes that after <u>Garrison</u> was decided, another Ninth Circuit panel did not apply or even acknowledge this "credit as true" rule where substantial evidence did not support an ALJ's rejection of treating medical opinions and his adverse credibility determination; instead, the panel simply remanded the case for further administrative proceedings.  <u>See</u> <u>Ghanim v. Colvin</u>, - F.3d -, 2014 WL 4056530, at *10 (9th Cir. Aug. 18, 2014).  In any event, to the extent that <u>Garrison</u> governs the Court's analysis, the Court finds it distinguishable, as discussed below.

In <u>Garrison</u>, the Ninth Circuit held that the district court should remand to the Commissioner for an award of benefits if the following three conditions are met: (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.  <u>See</u> <u>Garrison</u>, 2014 WL 3397218, at *20. Here, these three conditions have been met: the record has been fully developed, the ALJ failed to provide legally sufficient reasons for rejecting Dr. Boutros's opinion,

17

1   and a vocational expert testified that a person who required two unscheduled fifteen

2   minute breaks (as described in Dr. Boutros's opinion) would not be employable on

3   a full time basis.  (See AR 57.)

4        However, this does not end the Court's inquiry.  Even if the three conditions

5   set out in Garrison are met, the Court still retains the "flexibility to remand for further

6   proceedings when the record as a whole creates serious doubt as to whether the

7   claimant is, in fact, disabled within the meaning of the Social Security Act."  See

8   Garrison, 2014 WL 3397218, at *21 (citing Connett v. Barnhart, 340 F.3d 871 (9th

9   Cir. 2003)).  Here, the Court finds based on the record as a whole that there is serious

10  doubt as to whether plaintiff was in fact disabled within the meaning of the Social

11  Security Act as of the date of the ALJ's decision, for the following reasons.

12       First, the probative value of Dr. Boutros's opinion was questionable because

13  it was premised in part on a condition, plaintiff's hepatitis C, which was untreated.

14  (See AR 408, 422, 423.)  The record reflects that plaintiff had received treatment for

15  hepatitis C with good results while he was incarcerated.  (See AR 213, 224, 225, 227,

16  229, 247.)  The record also reflects that following his release from prison, plaintiff

17  obtained Medi-Cal coverage (see AR 50), which would presumably allow him to

18  receive more treatment.  To the extent that Dr. Boutros's opinion was issued during

19  a brief period when plaintiff was untreated, the opinion would not present a true

20  picture of plaintiff's limitations.  See Warre v. Commissioner of Social Sec. Admin.,

21  439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively

22  with medication are not disabling for the purpose of determining eligibility for SSI

23  benefits.").

24       Second, the record contains no other medical opinion consistent with Dr.

25  Boutros's opinion.  Rather, all of the other physicians who treated or examined

26  plaintiff or reviewed his records issued findings consistent with the ALJ's conclusion

27  that plaintiff could work.  Specifically, Dr. Cruz, an examining physician, opined that

28  plaintiff could perform medium work with no functional limitations.  (See AR 289-

18

94.)  Dr. Shearer, an examining opthalmologist, diagnosed bilateral cataracts and measured plaintiff's corrected vision at 20/100 bilaterally, findings which were incorporated in the ALJ's RFC determination.  (See AR 181-82.)  Dr. Kalmar and Dr. Hartman, state agency review physicians, each opined that plaintiff could perform medium work with some visual and environmental limitations.  (See AR 297-305, 334-41.)  Prison treatment records repeatedly stated that plaintiff was "stable" or "doing well" with no complaints.  (See AR 195, 225, 227, 229, 247.)

Third, the record reflects that plaintiff performed substantial gainful activity during a period of his incarceration in which he alleged he was disabled.  (See AR 30.)

Fourth, the factual differences between Garrison and this case also militate in favor of the Court availing itself of its "flexibility" to remand the case for further proceedings.  In Garrison, the ALJ committed "a variety of egregious and important errors" by failing to provide legally sufficient reasons for rejecting the claimant's testimony and the opinions of her treating and examining physicians.  See Garrison, 2014 WL 3397218, at *14-*19.  Here, the ALJ's only error was his failure to articulate legally sufficient reasons for rejecting a treating medical opinion that was not well-supported by the record.  In Garrison, a review of the record revealed "nothing that would create doubt as to Garrison's entitlement to the benefits she seeks" and only a "bare handful of records showing slight improvement in Garrison's condition."  See id. at *22.  Here, as detailed above, almost all of the medical evidence was consistent with the ALJ's determination that plaintiff was not disabled.

Therefore, based on its review and consideration of the entire record, the Court has concluded on balance that a remand for further administrative proceedings pursuant to Sentence Four of 42 U.S.C. § 405(g) is warranted here.  Accordingly, IT

//

//

//

19

1   IS HEREBY ORDERED that Judgment be entered reversing the decision of the

2   Commissioner of Social Security and remanding this matter for further administrative

3   proceedings.[7]

4

5   DATED:  September 17, 2014

6

7                                                          _____

8                                                          ROBERT N. BLOCK
                                                           UNITED STATES MAGISTRATE JUDGE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27   _____

28        [7]        Other than the limitation imposed in Section I regarding the relevant time
     period, it is not the Court's intent to limit the scope of the remand.

20